IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

LORAN E. TWYMAN,

      **Petitioner,**

v.                                                             Civil Action No. 2:05cv23
                                                                Criminal Action No. 2:01cr19
                                                                (Judge Maxwell)

**UNITED STATES OF AMERICA,**

      **Respondent.**

## OPINION/REPORT AND RECOMMENDATION

On March 4, 2005, the *pro se* petitioner, Loran E. Twyman, filed a Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255. Petitioner was subsequently granted permission to file an amended § 2255 motion and an amended motion was filed on April 12, 2006. On April 27, 2006, the undersigned determined that summary dismissal of this case was not warranted and the respondent was directed to file an answer. The respondent filed an answer on June 23, 2006. Petitioner filed his reply on August 7, 2006. This case is before the undersigned for a report and recommendation pursuant to Standing Order No. 4 and LR PL P 83.01, et seq.

**I. Procedural History**

**A. Conviction and Sentence**

Petitioner was named in seven counts of a twenty-nine count indictment filed on September 20, 2001 in the Northern District of West Virginia. Count one charged that Petitioner conspired to distribute narcotics in violation of 21 U.S.C. § 846. Counts three, four, five and six charged that Petitioner distributed narcotics in violation of 21 U.S.C. § 841(a)(1). Counts fifteen and twenty-seven charged that Petitioner laundered money in connection with a drug offense in violation of 18

U.S.C. § 1956(a)(1)(A)(i) and (2).

On February 27, 2002, Petitioner pled guilty to count six of the indictment, in which he was charged with distributing approximately 1.22 grams of cocaine hydrochloride and 1.22 grams of cocaine base, also known as crack. On April 7, 2003, Petitioner was sentenced to 172 months imprisonment.

**B. Direct Appeal**

Petitioner filed a direct appeal of his conviction and sentence on April 15, 2003. On December 5, 2003, the Fourth Circuit Court of Appeals affirmed the district court's decision and dismissed the appeal. In doing so, the Court specifically addressed two claims. First, the Fourth Circuit found that Petitioner's plea was knowingly and voluntarily entered. The Court noted that at Petitioner's Rule 11 hearing, he was properly advised as to his rights, to the offense charged and the maximum sentence for the offense. In addition, the Court noted that there was an independent factual basis for the plea and that the plea was not coerced or influenced by promises made outside the plea agreement.

Second, the Fourth Circuit found that Petitioner's offense level and criminal history category were correctly determined and that the applicable guideline range was therefore 151 to 188 months. Because Petitioner's sentence fell within the applicable range, the Fourth Circuit found that Petitioner's sentence was not subject to further review.

**C. Federal Habeas Corpus**

Petitioners' Contentions

(1) Counsel was ineffective for failing to conduct an adequate investigation and pursue exculpatory evidence.

(2) Counsel was ineffective for failing to advocate for his client, investigate, and challenge the government's enhancements to petitioner's sentence.

(3) It is a violation of the Sixth Amendment for a Judge to impose a sentence greater than the maximum authorized by the facts found by the jury or pled by the defendant.

(4) Counsel was ineffective for failing to argue that the government breached the plea agreement when it failed to recommend a sentence of 108 months, the low end of the guidelines.

(5) The guidelines imposed on the petitioner present an unfair disparity between the sentencing for offenses involving powder cocaine and cocaine base (crack) and the district court, in the exercise of its newly bestowed discretion, should depart from the guidelines and remove or narrow the disparity.

(6) Denial of right to due process, prosecutor allowed false evidence to stand uncorrected.

<u>Government's Response</u>

(1) Petitioner's claims of ineffective assistance of counsel are not supported by the record and must be dismissed.

(2) Even if counsel was deficient, Petitioner was not prejudiced by those errors and the results of the proceedings would not have been different.

(3) Petitioner's Sixth Amendment claim is inaccurate because his sentence was not increased by facts not presented to a jury.

(4) The Supreme Court's rule announced in <u>United States v. Booker</u>, 543 U.S. 220 (2005), is not retroactive to cases on collateral review and is not available to offer Petitioner relief in this proceeding.

## II. Analysis

"A petitioner collaterally attacking his sentence or conviction bears the burden of proving that his sentence or conviction was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose such a sentence, that the sentence exceeded the maximum authorized by law, or that the sentence otherwise is subject to collateral attack. 28 U.S.C. § 2255. A motion collaterally attacking a petitioner's sentence brought pursuant to § 2255 requires the petitioner to establish his grounds by a preponderance of the evidence." Sutton v. United States of America, 2006 WL 36859 *2 (E.D.Va Jan. 4, 2006).

**A. Ineffective Assistance of Counsel**

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court of the United States established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. The first prong of the test requires that petitioner demonstrate that counsel's performance was deficient and "fell below an objective standard of reasonableness." Strickland at 688. The second prong requires the petitioner to show that the deficient performance prejudiced the defense. Id. at 687. In order to satisfy the prejudice requirement of the two-prong test set forth in Strickland, defendant must show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Lockhart v. Fretwell, 506 U.S. 364 (1993).

In addition, "a defendant who alleges ineffective assistance of counsel following the entry of a guilty plea has an even higher burden to meet." Hill v. Lockhart, 474 U.S. 52, 53-59 (1985). In the case of a guilty plea, the defendant must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985) (footnote omitted); Hooper v. Garraghty, 845 F.2d 471, 475

4

(4th Cir. 1988). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland 466 U.S. at 694.

It is further noted that a Court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance. Strickland 466 U.S. at 689-90. Moreover, there are no absolute rules in determining what is reasonable performance. See Hunt v. Nuth, 57 F.3d 1327, 1332 (4th Cir. 1995) (counsel's representation is viewed on the facts of a particular case and at the time of counsel's conduct).

**Ground One**

In ground one, Petitioner asserts that prior to the plea agreement, his counsel assured him that he would receive a sentence of four to four and a half years. Petitioner asserts that he relied on this representation of counsel when he accepted the plea agreement. Petitioner asserts that he was induced into taking the plea because of counsel's sentence calculations, but had he known his actual sentence would be 14 years, be would not have pled guilty. Petitioner asserts that had counsel conducted a criminal background check on him, counsel would have realized that Petitioner's criminal history placed him in a higher guideline range.

In support of this claim, Petitioner attaches to his petition, several letters written by counsel to Petitioner and to the prosecuting attorney. See petition (dckt. 71) at Exs. A, D, and E (hereinafter referred to as "Ex. A," "Ex. D," and "Ex. E".) Petitioner asserts that those letters clearly show that counsel failed to adequately investigate his criminal history prior to advising Petitioner to accept the plea. Petitioner asserts that had counsel conducted a proper investigation, he would have discovered Petitioner's true sentencing range and advised Petitioner accordingly.

Based on the petition, and the letters attached thereto, it appears that prior to, or during plea

negotiations, counsel asked Petitioner what his criminal history looked like in an effort to obtain the best possible plea deal. Ex. D. After Petitioner repeatedly told counsel that his criminal history was "minimal," counsel negotiated a deal in which Petitioner would pled guilty to only one of the seven charged counts with further agreement that the government would recommend a sentence in the lower range of the guidelines. Based on the charges and Petitioner's representations about his past criminal history, counsel calculated that if Petitioner accepted the plea agreement, he would receive an approximate sentence of 108 months (based on the stipulated relevant conduct and a minimal criminal history), and be eligible for boot camp for the last 36 months of his sentence. Ex. A. Thus, with good time credits, and assuming that Petitioner would be eligible for boot camp for the last three years of his sentence, counsel calculated that Petitioner would spend only four to four and a half years in an actual Bureau of Prisons ("BOP") institution.[1] Id. Based on these calculations, counsel apparently advised Petitioner to accept the plea agreement, which he did.

However, after Petitioner pled guilty, the sentencing judge ordered the probation office to prepare a presentence investigation report. After receiving a copy of such report, counsel notified Petitioner that his criminal history was much more extensive than Petitioner lead counsel to believe and that counsel's original sentencing projections would be undermined as a result. Ex. D. Counsel informed Petitioner that he was looking at much more time than originally anticipated. Id. Despite

---

[1] It should be noted that throughout his pleadings, Petitioner continually states that counsel told him he would receive a sentence of four to four and a half years. However, this contention is not factually accurate. Petitioner's attorney actually predicted a sentence at or about 108 months based on the amount of relevant conduct stipulated in the plea agreement, a "minimal" criminal history, and the government's recommendation for a sentence at the low end of the guidelines. Assuming Petitioner would receive all eligible good time, and also qualify for boot camp, counsel predicted that Petitioner could serve as little as four years in a federal institution. That four years was not a prediction of sentence, but a prediction of the least amount of time Petitioner could spend in a federal institution. Thus, prior to entering the plea agreement, Petitioner had to know he was facing at least a nine year sentence, not a four year sentence.

that fact, it does not appear that the initial miscalculation[2] would have effected counsel's advice. Petitioner stipulated to relevant conduct of less than 500 grams in the plea agreement. Plea Agreement (dckt 34) at 4-5. However, in his letter of December 11, 2003, counsel informed Petitioner that the government had witnesses who would testify that Petitioner was seen with a "brick," which could have added at least an additional 700 grams to his relevant conduct if the case proceeded to trial. Ex. E. Therefore, despite the early miscalculation of Petitioner's potential sentence, counsel still felt that Petitioner was substantially advantaged by accepting the plea agreement. Ex. E.

In this ground, Petitioner essentially argues that it was unreasonable for counsel to rely on the representations of his client in doing preliminary calculations of Petitioner's possible sentence before negotiating a plea agreement. The Court finds this argument to be without merit. There was no one more familiar with Petitioner's criminal history than Petitioner himself. Likely knowing that his criminal history would be important to a proper calculation of his sentence, Petitioner chose to downplay the severity and extensiveness of his criminal past. Moreover, even if Petitioner had told counsel the truth about his criminal history, it appears that counsel would still have recommended that Petitioner accept the plea agreement. If Petitioner proceeded to trial, it appears that the government could have alleged, and most likely proven, relevant conduct of more than 1200 grams. Petitioner's plea agreement stipulated to less than 500 grams. In addition, six other counts, including a conspiracy count which could have yielded significantly more jail time, was dismissed. Thus, even after discovering Petitioner's actual criminal history, counsel still believed that Petitioner made a

---

[2] The Court uses the term miscalculation only in the sense that Petitioner's sentence was higher than originally anticipated. Had Petitioner actually had a "minimal" criminal history as he told counsel, there may not have been any discrepancy between the predicted sentence and the actual sentence.

7

good deal. Counsel would have had no reason to advise Petitioner on withdrawing his plea, unless Petitioner specifically asked about such a possibility. Therefore, the Court finds that counsel's performance did not fall below an objective standard of reasonableness.

However, even if counsel should have conducted a more thorough review of Petitioner's criminal history prior to advising him on the plea, Petitioner's Rule 11 hearing cured any deficiency by counsel. In an attempt to establish prejudice, Petitioner asserts that had he known what his potential sentence would actually be, he would not have pleaded guilty. Nevertheless, "if the information given by the court at the Rule 11 hearing corrects or clarifies the earlier erroneous information given by the defendant's attorney and the defendant admits to understanding the court's advice, the criminal justice system must be able to rely on the subsequent dialogue between the court and defendant." United States v. Lambey, 974 F.2d 1389, 1395 (4th Cir. 1992) (*en banc*), cert. denied, 513 U.S. 1060 (1994).[3] Moreover, misadvice regarding sentencing possibilities is not "but for" cause of a guilty plea so long as the plea was "based on risk information given ... by the sentencing court." United States v. Craig, 985 F.2d 175, 179-180 (4th Cir. 1993). In other words, if Petitioner was properly informed of his potential sentence by the trial court at the Rule 11 hearing,

---

[3] As will be discussed more fully in this Order, the instant case is substantially similar to Lambey. During the plea negotiations in Lambey, counsel told Lambey that "he felt the case would fall into the sentencing range defined in levels 27 to 29 of the sentencing guidelines, providing for a sentence of somewhere between 70-108 months." United States v. Lambey, 974 F.3d at 1391 (internal quotations omitted). Counsel even gave Lambey a copy of a guidelines manual from which counsel had calculated Lambey's sentence. Id. at 1392. Lambey then signed the plea agreement, even though it provided that his sentence would be in the sole discretion of the sentencing judge and that any prediction was not binding on the court. Id. In reviewing Lambey's case, the Fourth Circuit noted that Lambey "has suggested no confusion about the nature of the charges, the defenses to them, or their applicability to his factual circumstances to satisfy a finding of guilt. Moreover, he suggests no error in the court's advice to him on what he could receive by way of a sentence. He contends simply that he believed he would receive a shorter sentence than that outlined by the court because of his discussions with his attorney that took place prior to the Rule 11 proceeding." Id. at 1394. The Fourth Circuit found Lambey's argument to be without merit because any misinformation given to Petitioner by counsel during the plea negotiations was corrected by the sentencing court at the Rule 11 hearing.

he cannot be prejudiced by the prior misadvice of counsel. United States v. Foster, 68 F.3d 86, 88 (4th Cir. 1995).

During Petitioner's Rule 11 hearing, at which his guilty plea was entered, the Court specifically informed Petitioner of the maximum penalties he faced:

> THE COURT: Looking to the quantity of cocaine hydrochloride and cocaine base alleged in Court six of the indictment and looking to the penalty provisions of Tile 21, United States Code, Section 841(b)(1)(C), the Defendant is subject to a maximum term of imprisonment of 20 years; in addition, the Defendant faces a statutory maximum fine of $1 million and a minimum period of three years of supervised release following any term of imprisonment ...
> Now, nevertheless, Mr. Twyman, the court should advise you that any prior convictions could play a role in the calculation of a person's criminal history under the sentencing guidelines and would impact the ultimate sentence imposed.

Transcript of Plea Hearing (dckt. 68) at 8-9.

Following a summarization of the government's case by Trooper First Class Robert Cooper, the following exchange occurred between the Court and Petitioner:

> THE COURT: Mr. Twyman, do you understand the charges contained in Count six of the indictment?
>
> THE DEFENDANT: Yes, sir, I do.
>
> THE COURT: Do you understand the maximum penalty?
>
> THE DEFENDANT: Yes, sir, I do.
>
> THE COURT: Do you understand the rights you give up by pleading guilty to this Count six?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: If you understand the charges contained in Count six of the indictment, if you understand the maximum penalty, if you understand the rights you give up, what is you plea now, after all we've been through here this morning, guilty or not guilty?

> THE DEFENDANT: Guilty, sir.
>
> THE COURT: Has your plea of guilty here been the result of any threats, coercion, or harassment?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: Is your plea the result of any promises or inducements by anyone in any way, other than those contained in the agreement?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: Has anyone promised or predicted what the exact sentence would be in your case?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: The Court would want you to understand that no one could know, at this time, the exact sentence that would be imposed in your case, and that will not be determined until after we have a presentence report and you've had an opportunity to review it and file objections if necessary, and the Government would have the same right.

Plea Hearing Transcript (dckt. 68) at 32-34.[4]

Based on Petitioner's representations at the plea hearing,[5] even if his trial counsel provided him with incorrect information about his possible sentence, Petitioner was not prejudiced by such advice. The trial court clearly explained to Petitioner the maximum penalty he faced by pleading guilty to count six of the indictment and even informed Petitioner that no one could predict his

---

[4] It should also be noted that the plea agreement also informs Petitioner that the maximum penalty for count six of the indictment is 20 years. Plea Agreement (dckt. 34) at 2. Moreover, the plea agreement specifically states that "[t]here have been no representations whatsoever by any agent or employee of the Untied States or any other law enforcement agency of the defendant's attorney as to what the *final* sentence will be." Id. at 3 (emphasis added). Finally, the plea agreement notes that Petitioner's sentence is within the discretion of the sentencing court and that the court is not bound by any sentencing recommendations. Id. at 3-4.

[5] "Statements of fact by a defendant in Rule 11 proceedings may not ordinarily be repudiated, and, similarly, findings by a sentencing court in accepting a plea 'constitute a formidable barrier' to attacking the plea." United States v. Lambey, 974 F.2d at 1395 (citing Blackledge v. Allison, 431 U.S. 63, 73-73 (1974)).

sentence at that time.[6] Petitioner's sentence was well below the statutory maximum, and below the sentence that he was informed he could receive at the Rule 11 hearing. Accordingly, ground one is without merit and should be denied.

**Ground Two**

In this ground, Petitioner asserts that counsel failed to advocate for his client by investigating and challenging the Government's enhancements to the Petitioner's sentence. Petitioner cites United States v. Booker, supra, in support of this claim. More specifically, Petitioner asserts that counsel failed to understand the sentence Petitioner could receive based on 1.22 grams of cocaine and 1.22 grams of cocaine base. Further, Petitioner asserts that it was unprofessional for counsel to understate the prospects of the case to exert undue influence on Petitioner's decision to enter a plea. Petitioner asserts that had counsel stopped the entry of the plea after it was known that his exposure was far greater than initially thought, counsel could have effectively protected Petitioner's rights by cross-examining witnesses concerning the drug weights attributed to Petitioner.

This ground has no merit. In the plea agreement, Petitioner stipulated that his relevant conduct was at least 150 grams, but less than 500 grams of cocaine base. Plea Agreement (dckt. 34) at 4-5. The United States Sentencing Guidelines provide for a Level 34 for this range of crack cocaine. USSG § 2D.1(3). Granting Petitioner a three level reduction for acceptance of responsibility, Petitioner was sentenced based on a Total Offense Level of 31. Thus, Petitioner was correctly sentenced according to the stipulated amount of relevant conduct contained in the plea

---

[6] Like the petitioner in Lambey, Petitioner in this case does not challenge the Rule 11 proceedings nor allege any error by the sentencing court at that proceeding. Nor could he successfully make such argument in a § 2255 proceeding since, on appeal, the Fourth Circuit specifically found that at Petitioner's Rule 11 hearing, he was properly advised as to his rights, to the offense charged and the maximum sentence for the offense.

11

agreement.[7] Therefore, there was no reason for counsel to object and counsel was not ineffective for failing to do so. Accordingly, ground two is without merit and should be denied.

**Ground Four**

In this ground, Petitioner asserts that counsel was ineffective for failing to argue that the United States breached the plea agreement by failing to recommend a sentence of 108 months, the low end of the guidelines. However, because the United States made no such agreement, it did not breach the plea agreement and counsel could not have been ineffective for failing to object.

Pursuant to section V.C. of the plea agreement, the United States agreed to make the following nonbinding recommendation:

> (3) That the court sentence the defendant to incarceration at the lowest end of the guidelines *ultimately found to be applicable by the Court*.

Plea Agreement (dckt. 34) at 4 (emphasis added). The government did in fact make this recommendation. See Respondent's Response at 5. There was never any agreement that the government would specifically recommend a sentence of 108 months. In addition, it should be noted that even if the government had not made a recommendation for a sentence at the low end of the guidelines, such would not have constituted a breach of the plea agreement.

Under section VII.A. of the plea agreement, the parties also agreed that "[i]f the defendant hereafter engages in conduct defined under the Application Notes, 4.(a) through (i) of Guidelines 3C1.1, fails to cooperate as promised, fails to pay the special assessment prior to the sentencing hearing, violates his bond, or violates any other provision of this plea agreement, then the United States will not be bound to make the recommendations in paragraph V.C., and the defendant will

---

[7] This fact was affirmed on appeal when the Fourth Circuit found that Petitioner's offense level and criminal history category were correctly determined.

have no right to withdraw his plea." Plea Agreement (dckt. 34) at 5-6. Because Petitioner was arrested while awaiting sentencing, the United States would have been within its rights to withdraw its sentencing recommendation.

**B. Blakely/Booker Arguments**

In Apprendi v. New Jersey, 530 U.S. 466, 490 (2000), the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." In June of 2004, the Supreme Court applied this ruling to the State of Washington's sentencing scheme and found that the imposition of state sentencing enhancements - based solely on factual findings by the court - violated a defendant's Sixth Amendment rights because the facts supporting the findings were neither admitted by the defendant nor found by a jury. See Blakely v. Washington, 542 U.S. 296, 301-303 (2004). In addition, the Court expressly noted that it was not considering the constitutionality of the federal sentencing guidelines. Id. at 305, n 9. Subsequently, however, the Supreme Court took up this issue in United States v. Booker, 543 U.S. 220 (2005).

In Booker, the Supreme Court held that Blakely applies to the federal sentencing guidelines, and therefore, the Sixth Amendment is violated when a district court imposes a mandatory sentence under the Guidelines that is greater than the maximum authorized by the facts found by the jury alone. Booker, 543 U.S. at 243. Additionally, the Court held that two provisions of the statute creating the guidelines system must be excised to make them compatible with the Sixth Amendment, thereby rendering the guidelines advisory. Id. at 258-261.

**Ground Three**

In this ground, Petitioner asserts that his sentence exceeded the maximum authorized by facts

as found by the jury or pled by the defendant. In addition, Petitioner asserts that counsel was ineffective for failing object to his sentence on these grounds. In support of this claim, Petitioner again cites United States v. Booker. Petitioner further asserts that in order to pass constitutional muster under Booker, his sentence must be limited to the facts that he pled to or else his rights under the Sixth Amendment were violated.

As noted above, Petitioner's sentence was correctly calculated based on his stipulation as to relevant conduct contained in the plea agreement. Therefore, Booker does not apply and counsel was not ineffective for failing to object to his sentence on this ground. Moreover, even if Petitioner had received a sentence above the statutory maximum, his claim is foreclosed by the Fourth Circuit's decision in United States v. Morris, 429 F.3d 65, 72 (4th Cir. 2005), finding that Booker is not retroactive to cases on collateral review.[8]

**Ground Five**

In this ground, Petitioner asserts that the sentencing Court, using its newly bestowed discretion from Booker, should exercise that discretion and apply a sentence that it considers reasonable given the circumstances. Petitioner asserts that it was unfair to apply the guideline sentence in this case. However, as noted in ground three above, Booker is not retroactive to cases on collateral review. Thus, ground five must fail.

C. **Ground Six**

In this ground, Petitioner asserts that the prosecutor's reliance on false evidence violated his

---

[8] Booker was decided well after Petitioner's conviction and sentence became final. Petitioner's direct appeal was affirmed on December 5, 2003. Petitioner did not file a petition for writ of certiorari with the United States Supreme Court. Thus, his conviction and sentence became final on or about March 7, 2004. See Clay v. United States, , 537 U.S. 522 (2003). Booker, however, was decided on January 12, 2005. For the same reason, Petitioner cannot rely on the Supreme Court's holding in Blakely v. Washington, supra, the Court's precursor to Booker, either. Blakely was decided on June 24, 2004.

14

due process rights. In support of this ground, Petitioner asserts that the prosecutor used false evidence to obtain a conviction in this case. Moreover, Petitioner asserts that because the prosecutor knew at the time of sentencing that the information was false, his silence shows that his actions were knowing.

This ground is without merit as Petitioner has failed to identify what evidence was false and establish how it was used to violate his due process rights.

### III. Recommendation

For the reasons set forth in this opinion, the undersigned recommends that the Court enter an Order **DENYING** Petitioner's § 2255 motion and **DISMISSING** this case with prejudice.

Within ten (10) days after being served with a copy of this Opinion/Recommendation, any party may file with the Clerk of the Court written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections shall also be submitted to the Honorable Robert E. Maxwell, United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to provide a copy of this Opinion/Report and Recommendation to the *pro se* petitioner and counsel of record.

DATED: March 29, 2007.

/s *John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE